---

## *In re* LEE.

### *(District Court, D. Mississippi.* March 14, 1891.)

CONCEALED WEAPONS—DEPUTY-MARSHAL IN DISCHARGE OF HIS DUTY.

Petitioner, a United States deputy-marshal in Tennessee, while in the town of Corinth, just across the line in Mississippi, learned that one B., for whose arrest he had a warrant, was at another point on the railroad. Being without arms, and knowing the reputation of the accused as a dangerous character, he borrowed a pistol, and belted it on under his overcoat. While waiting for the train, he learned that the accused had returned to that neighborhood, and determined to immediately go in search of him. During the evening, after he had abandoned the idea of going on the train, he was arrested in Corinth, on the charge of carrying concealed weapons, but action was deferred upon the presentation of his commission as a deputy-marshal and the warrant which he had to execute, and he was released. He immediately went in search of the accused, but stopped over night at his own house, and started again at daylight, and continued his search that day, making the arrest upon the day after. Subsequently he was again arrested for the same offense, brought before the mayor, who fined him, and that judgment was sustained by the state circuit court on appeal. *Held,* on a petition for *habeas corpus,* that he was an officer of the United States in the regular discharge of his duty, notwithstanding his stop for a night's rest at his own home, and was entitled as such to be armed, and that he must be discharged.

On Writ of *Habeas Corpus.*
*M. A. Montgomery,* for relator.
*Sullivan & Whitfield,* for the State.

HILL, J. This cause is submitted upon petition of relator; return to the writ by J. P. Walker, sheriff of Alcorn county, to whom the writ was directed; answer or suggestions to the return by the relator; proof and argument of counsel for the relator; and for the state of Mississippi. The petition of the relator upon which the writ was issued, in substance, charges that, at the time he was charged with a violation of the laws of the state of Mississippi, by carrying about his person concealed a pistol, and upon which he has been arrested and convicted by a jury in the circuit court of Alcorn county, and upon which he has, by

the judgment of the court, been held to pay a fine of $50 and costs, and to remain in the custody of the sheriff of Alcorn county until the same is paid, and was, at the time of presenting his petition, confined in the jail of said county, and is a deputy-marshal of the United States for the western district of Tennessee; that at the time of his arrest he had in his hands to be executed a warrant issued by the commissioner of the United States court for West Tennessee, commanding him to arrest one Frank Bowers for a violation of the postal laws of the United States, committed in the western district of Tennessee; that he was on his way to execute said warrant, and had the pistol on his person to protect himself, and enable him to make said arrest, and for no other purpose; and that he had the right, under the constitution and laws of the United States, to carry about his person a pistol for the purposes stated; and that his conviction and imprisonment is a deprivation of his personal liberty, contrary to the constitution and laws of the United States. The return of Walker, the sheriff of Alcorn county, is that he held the relator in custody by virtue of a *mittimus* or execution *pro fine*, issued by the clerk of said circuit court upon said judgment, which writ is made part of the return. The relator does not deny the facts stated in the return, but, by way of answer or replication to the return, in substance states the following facts: That on the 20th day of December, 1890, before that time and since, he was, had been, and is a deputy-marshal of the United States, duly commissioned and qualified, and had, at the time, in his hands for execution, a number of warrants for the arrest of persons charged with violations of the laws of the United States, and especially for the arrest of said Frank Bowers, charged with violating the postal laws of the United States; that the said Frank Bowers had fled from his home, so that relator did not know his whereabouts, until he went to the city of Corinth, on the morning of the 20th of December, 1890, Corinth being his post-office where he receives the most of his mail, when he received a letter informing him that Frank Bowers, for whom he had been searching, was in Kenton, on the Mobile & Ohio Railroad, some 100 miles north of Corinth; that he determined to take the train for Kenton on its arrival, and knowing Bowers to be a dangerous man, and having no pistol or other weapon to defend himself, or to aid him in making the arrest, he borrowed a pistol from one of the deputy-sheriffs of Alcorn county, which pistol was in a scabbard, which he belted around his body under his overcoat; but whilst waiting for the train he was informed that Bowers had returned to McNairy county. Upon receiving this information, relator determined to go immediately in search of and to arrest him; that in doing so he would pass from Corinth within a half mile of his own home, to the place where he expected to find him; that on that evening he did go directly to make the arrest, arriving late at night at home, it being only about a half a mile out of the direct route, and that he left the next morning by daylight, went immediately in search of Bowers, continued his search during the day, and, after having tracked him 12 or 13 miles, found and arrested him, the following day, it being Monday, and delivered him to the commissioner, who is-

sued the warrant. This is the substance of all that need be stated in the pleadings, if such they may be called.

The proof sustains the statements made in the answer or replication. The proof, among other things which need not be stated, shows that during the evening, after the relator had abandoned going on the railroad, and before leaving Corinth, the mayor of the city discovered the pistol on the person of the relator, and ordered the marshal of the city to arrest and bring him before him to answer the charge of violating the law of the state of Mississippi prohibiting carrying concealed weapons, which was immediately done, when relator gave as his defense that he was a regular deputy United States marshal, and produced his commission as such, and also process which he had to serve. The mayor, not being satisfied whether this was a sufficient defense, deferred action for the time. But on the 3d day of January thereafter, the relator having n his possession to be executed a warrant for the arrest of certain persons charged with robbing a post-office, in McNairy county, Tenn., pursued them to Corinth, where one of them was arrested by a deputy-sheriff, and conveyed to the commissioner, who committed him to jail; and, while relator was in Corinth, on this business, he was again arrested, and taken before the mayor, who fined him $25 and cost upon the said charge. From this judgment the relator appealed to the next term of the circuit court of Alcorn county. On the trial in said court the relator offered to introduce proof of his defense, which was denied by the court, and the jury was instructed, in substance, that if the relator (the defendant in that case) carried a pistol concealed about his person, in the county of Alcorn, he was guilty of a violation of the law, and they would find him guilty, which the jury did; and thereupon he was adjudged to pay a fine of $50, and all costs, and stand committed until the same was paid; that in default of payment he was imprisoned in the jail of said county, from which imprisonment he seeks by this proceeding to be released.

I have no power, and I do not assume, in this proceeding, to review or pass upon the proceedings had before the mayor, or in the circuit court. If errors were committed in those proceedings, they can be inquired into no further than is necessary to ascertain the merits of this *habeas corpus* proceeding, and if it appears from those proceedings that the relator was, by them, deprived of some right he then had under the constitution and laws of the United States, as one of their officers, and was thereby deprived of his personal liberty, if he was so deprived, the proceedings before the mayor and in the circuit court will be held absolutely void; but, if he was not so deprived of his personal liberty, then neither I, as United States judge, sitting in chambers, nor any court of the United States, can in any way interfere with the judgment of the circuit court of Alcorn county, or any proceeding under it.

It is well settled in the case of *In re Neagle*, 10 Sup. Ct. Rep. 658, recently decided by the supreme court of the United States, and by the numerous decisions of that court, referred to in the opinion of the court, that it is the duty of the several judges and courts of the United States

to relieve, by writ of *habeas corpus*, any of the officers of such courts. or of the United States, when imprisoned under proceedings in the state courts, or by state officers, when such officers of the United States are obeying any order or process of such judge, commissioner, or court of the United States, and when the officer of the United States is in the performance of any duty in obeying or executing any such order, decree, or process; and any judgment or proceedings had in a court of the state against such officer, for anything properly done by him in the discharge of such duty, is absolutely null and void; and, if he is deprived of his personal liberty for such discharge of official duty, by any proceedings had in the courts, or by the officers of the state, the judges of the United States courts, in chambers, or the district or circuit courts in session in the district or circuit in which such officer is so wrongfully deprived of his personal liberty, will relieve him upon *habeas corpus* proceedings.

The only questions to be decided in this cause are, was the relator in the discharge of his official duty as deputy-marshal for the western district of Tennessee when he was informed of the probable whereabouts of Bowers by the letter he received in Corinth, and determined to pursue and arrest him wherever he could be found? And did he have a right, as a means to defend himself and to aid in making the arrest, to, then and there, arm himself with the pistol, if he was in the discharge of such duty; and, having, then and there so armed himself, had he the right to carry the pistol with him for the purpose mentioned? If so, then, under the constitution and laws of the United States, he must be held by the judges and courts of the United States as entitled to these rights, as against the proceedings had against him by either the mayor of Corinth, or in the circuit court of Alcorn county, stated in the proceedings and proof, and must be released from the custody of the sheriff of said county under the proceedings before me. It is contended with great earnestness by the learned counsel on the part of the state that the relator had no power, under any circumstances, to make any arrest in this state for a violation of the laws of the United States in the western district of Tennessee, and especially the person for whose arrest he then had process in his hands. This, I think, is a mistake. Section 788 of the Revised Statutes of the United States provides "that the marshals and their deputies shall have in each state the same powers in executing the laws of the United States as the sheriffs and their deputies in such state may have by law in executing the laws thereof." Section 3034 of the Mississippi Code of 1880 provides "that if a person who committed an offense, and is pursued by a sheriff or constable, escapes from the county of such officer, he may pursue and apprehend the party charged in any county of this state, and take him to the county in which the offense was committed;" and I presume every other state has a like provision, which is a matter of necessity to prevent the escape of persons charged with crime; and, reasoning by analogy, the marshals' districts being compared to the counties in the states, I can see no reason why the same rule shall not prevail, there being the same reason for

its exercise. If a marshal of the United States, pursuing one charged with crime for violating the laws of the United States, is compelled to stop at the line of his district when in pursuit, and let the culprit go free, then, indeed, there would often be a failure of justice, certainly never contemplated by congress. Some powers are expressly given to officers, while others are necessarily implied, as it seems to me must be the case when the offender is pursued by the marshal; and if Bowers had fled into Mississippi, while being pursued by the relator, as was the case in pursuing Cagle a short time afterwards, in my opinion he might have lawfully arrested him in Corinth under the process in his hands. But in this case that rule does not apply, which leaves the question as first stated.

That the relator was a deputy-marshal of the United States while he was in Corinth, and that he then had the warrant in his hands to be executed, is admitted. That he had the right to go to Corinth, his post-office, although in another state, cannot be denied. That he received notice first by letter that Bowers was then in the neighborhood of Kenton, 100 miles away, is proven. What was his duty as such marshal? Evidently to go there and arrest him. But he knew him to be a dangerous man, a refugee from justice, supposed to be among his friends, and strangers to the relator. What was, then, not only his right, but his duty as well? Unquestionably to arm himself to enable him to protect himself, and enable him to make the arrest. He had no arms with him. Was he compelled to wait until he crossed the state line to procure a pistol, and then to stop off somewhere on the way where he might not be able to procure one? Certainly not. I therefore conclude that he had the right to procure the pistol for the purpose and under the circumstances stated. While waiting for the train he learned that Bowers had returned to McNairy county. What was then his duty as marshal of the western district of Tennessee, having the warrant for the arrest of Bowers in his hands? It was evidently to go and arrest him in his district, wherever to be found. He had the pistol in his possession for the purpose of defending himself if attacked while in the discharge of his duty, and to enable him to make the arrest. Did the fact that the information received made it necessary to take a different route from the first contemplated make it less necessary that he should proceed and make the arrest, or less necessary that he should go armed to enable him to execute the process in his hands? Certainly not. But it is contended that the presumption is that he had a pistol at home, and should have returned the one he borrowed, and waited until he got home to get one. The proof is silent as to whether he had one at home or not; but, in the absence of the proof, it will be presumed he had not. Besides, the state line is but three and a half or four miles from Corinth, where he would be in his own district, and might before reaching home meet with Bowers. But it is insisted, also, that he should have left Corinth immediately, but that, on the contrary, he ordered his horse shod, and waited for it to be done; and that in the mean time he bought an overcoat, and that he gave a neighbor some assistance in the sale of a

bale of cotton; that he settled a dispute between his son and a man about the number of some chickens sold by the former to the latter; that he waited for his sons until the balloon was raised, which they had gone to witness; that he stopped at his home, (which was on the direct way from Corinth to where he expected to find Bowers,) and remained until daylight next morning. Were these delays unwarrantable? I think not. The proof shows that he arrived late at night, and set out at daylight next morning, and spent the day in search for Bowers, and, after following him 12 or 13 miles, made the arrest, and had Bowers before the commissioner in another county on the next day. He was not under obligations to go without food until he made the arrest, or without sleep; and where better to get it than at home? The proof shows that the relator is a sober, peaceable, upright man, and that he properly conducted himself while in Corinth, and that he wore the pistol in the same way that peace-officers usually wear them.

Without further comment, I am satisfied that relator was in the discharge of his official duty from the time he determined to go from Corinth in the pursuit of Bowers; that in going from Corinth to Tennessee line he was as much in discharge of his official duty as after he crossed the state line, or when he made the arrest of Bowers; and that he was as much under the protection of the constitution and laws of the United States, during that time, as after he crossed the state line, as one of the officers of the United States; and that he is entitled to be discharged under these proceedings from the imprisonment imposed upon him. I exceedingly regret to do anything which interferes with the proceedings in the state tribunals; and I will further say that I am satisfied that, had the real facts been understood, this conflict would not have arisen. The facts in this case are different from those in any reported case, and it may, indeed, be considered as a case of first impression, and one about which there may well be a difference of opinion among those most desirous to do justice and maintain the laws, state and national. It has been my misfortune, during my 25 years on the federal bench in this state, to have before me a number of cases of first impressions, in which I have had little or no aid from prior adjudications, and in these I have had to rely upon what appeared to me to be common justice and right. Being satisfied of the correctness of the conclusion reached, I have but one duty to perform, and that is to order the release of the relator from the imprisonment imposed upon him.